## M. D. P. THOMPSON *vs.* JAMES B. SOULE.

### Franklin.   Opinion June 7, 1912.

*Agreement.   Commissions.   Contract.   Exceptions.   Extension of Option.
Motion.   Quantum Meruit.*

1.   The plaintiff had two written options given by the defendant authorizing
him to sell certain timber land at commission of 5% within a specified
time and at a price named.   The time named in both options had expired
and no sale had been affected and no customer obtained ready and willing
to pay the price named.   The plaintiff claimed that, in addition to the
written options, the defendant promised to pay him for his services in
trying to find a customer for the property, even if the property should be
sold to other parties by the defendant.   Whether there was such a con-
tract as the plaintiff claimed, in addition to the options, was an issue of
fact for the determination of the jury.

2.   The following instruction to the jury on the question of damages were
held to be correct:  "You are to make the plaintiff whole as near as you
can.   I don't know how you will figure it.   It appears that the plaintiff
did more or less work.   It seems impossible for him to state what he did,
but in arriving at the amount which he is entitled to, if entitled to any-
thing, you will consider the value of the property and the effort he made,
according to the evidence, and determine what would be a fair, a reasonable
price for the services performed."

On Motion and Exceptions.   Motion and Exceptions overruled.

This is an action of assumpsit.   In the declaration are two counts.
The first count is an account annexed to the writ for $6000 as com-
missions upon the sale of 12,800 acres of timber land.   The second
count alleges that, at the request of defendant, the plaintiff per-
formed certain labor and services for him in selling and assisting
in finding a customer for said land and that said services were
reasonably worth $6000; that in consideration of said services the
defendant promised to pay the plaintiff so much as he reasonably
deserved.   The jury rendered a verdict for the plaintiff for $1425.

Case stated in the opinion.

*H. S. Wing, E. E. Richards,* for Plaintiff.

*A. Simmons,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HANSON, JJ.

KING, J. This cause is before the Law Court on defendant's motion and exceptions. It is an action of assumpsit containing two counts. In the first the plaintiff alleges that the defendant is indebted to him, according to an account annexed, for $6000 as commissions upon the sale of 12,800 acres of timber land.

In the second count he alleges that at the defendant's request he performed certain labor and services for him in selling and assisting to find a customer for said land and that in consideration thereof the defendant promised to pay him so much money as he reasonably deserved to have therefor, which he avers is the sum of $6000. There was also the common money count with specifications thereunder.

The land was sold for $115,000, and it was admitted that if the plaintiff was entitled to recover under the first count for commissions the damages would be 5% on the selling price, or $5750. The verdict was $1425, showing that the jury did not find the plaintiff entitled to recover the commissions sued for, but that he was entitled to recover that sum for his labor and services sued for under the second count in his writ.

1. The motion. Two written options, or contracts, given by the defendant to the plaintiff were put in evidence, under which the plaintiff was authorized to sell the land on commission at 5%, within a specified time, and at a price named. The first option was dated March 15, 1905, and continued up to May 1 following. The other option was given February 18, 1908, for thirty days with the privilege of an extension for thirty days more. The plaintiff contended that between the time the first option expired and February 18, 1908, two other options were given him. This the defendant denied. The property was not sold during the life of either of the written options, but was conveyed by the defendant to the Great Northern Paper Company by deed dated September 1st, 1909.

The plaintiff contended and introduced evidence tending to show that from the time the first option was given to the time of the sale of the ·property he was acting as the defendant's broker and agent in an effort to find a customer for the land, notwithstanding the fact that during a considerable part of that time he had no written option in actual force. And the evidence does show that during that time the plaintiff corresponded with many persons in relation to a sale of the land, and showed the property to several parties whom he had interested in it. It appears that a Mr. Record —representing himself and others—became interested in the property through the plaintiff's efforts and had it examined and estimated by Prof. Austin Carey, the then State Forester. After that exploration the plaintiff and defendant met Mr. Record in an effort to close a sale with him, which was not done. This interview was after the option of February 18, 1908, had run out. The plaintiff testified that at that time the defendant said to him "It is for your interest for me to sell this property to this party on account of your commission," and that he replied: "Mr. Soule, lay that right one side, work for your own interest; I have other parties, and if we can't sell these parties we will work at the other parties, and see if we can't get your price," to which the defendant replied: "Mr. Thompson, I will see that you have your pay for your trouble if your party don't buy." The plaintiff also testified that at another time the defendant said in a conversation concerning his right to sell the property himself free from the plaintiff, "But if I do sell it free from you I will satisfy you for your trouble you have been to."

In answer to questions on cross examination the plaintiff further stated that before the time of the Record conference and soon after the option of March 15, 1905, was given, the defendant promised him that he would pay him for his services in trying to find a customer for the property, even if the property should be sold to other parties by the defendant. On the other hand, the defendant testified that he never at any time promised to pay the plaintiff anything for his services in case he did not sell the property under the written options, or produce a customer for it able and willing to buy it under the terms of the options. Whether there was such a contract, as the plaintiff claimed, in addition to

the options, was an issue of fact submitted to the jury. The presiding Justice gave the jury explicit instructions as to this precise issue. Among other things he said: "But the plaintiff says that after, or at about the time of this meeting of the plaintiff and defendant and Record, when they tried to carry through this deal, where $93,000 had been offered, they had some talk in regard to the commission, and that he gave certain advice to Mr. Soule, and that at practically the same time the defendant told him to continue and to keep his parties interested—that is in substance what he said—and if he didn't procure a customer, and the defendant got no return for the work he had done and would do, if he continued in advertising and forcing the property upon the market, he would pay him for his services and disbursements. Now the defendant denies that. That is a contract the plaintiff sets up, and he must prove it by a greater weight of evidence. There must be a preponderance of the evidence in his favor upon that branch of the case." And the jury were further instructed: "If you find that the plaintiff is not entitled to his commission because he has not sustained the burden of proof upon that branch of the case, and you do find that the other contract or agreement that is claimed was made after the Record deal fell through, then you will come to the question of damages upon that branch of the case."

That issue was stoutly contested, with the testimony of the plaintiff and defendant sharply in conflict, and the jury found the issue in the plaintiff's favor. If they believed him and accepted his testimony as against the defendant's their finding in his favor on this branch of the case was justified. After a careful examination of all the evidence in the case the court does not find that the jury's conclusion was unmistakably wrong.

The defendant complains further that the damages awarded are so excessive that a new trial should be granted. It is to be borne in mind that the plaintiff contended, and the jury may have so found, that the defendant had promised to pay him (in case he should not be entitled to commissions under the options) for all his services and disbursements in trying to find a customer for the land during the whole period from the time of the first option in March, 1905, to the time of the sale of the property in September, 1909, a period of 4½ years. The extent and character of the

plaintiff's services during that period, and the amount he should receive therefor, were matters of fact to be determined by the jury. The parties were entitled to their judgment on those matters, and the jury awarded the plaintiff $1,425. The court might not have awarded as much. Difference of opinion and judgment is perhaps to be expected in such matters. But a careful reading of the evidence in the case does not show that the damages awarded by the jury are so manifestly excessive that they ought not to stand.

The exception. The defendant excepted to the following instructions to the jury as to the damages the plaintiff might recover under his claim for services as sued for in the second count in the writ: "You are to make the plaintiff whole as near as you can. I don't know how you will figure it. It appears that the plaintiff did more or less work. It seems impossible for him to state what he did, but in arriving at the amount which he is entitled to, if entitled to anything, you will consider the value of the property and the efforts which he made, according to the evidence, and determine what would be a fair, a reasonable price for the services performed."

The defendant contends that the instructions excepted to were erroneous because the jury were told to consider the value of the property. We think the value of the property was a proper element for the jury to consider. It was material to the question whether the services claimed to have been rendered were reasonable in kind and extent, for what would be a reasonable service and expense in an effort to sell a tract of land valued at $100,000 might be grossly unreasonable concerning a tract worth only $100. The plaintiff claimed that he was employed by the defendant to continue his efforts to find a purchaser for the property, and keep it upon the market, under an express promise that even if he did not make a sale of the property, so as to be entitled to commissions, he should nevertheless be paid for his services and expenses.

That employment, if it existed as the plaintiff claimed, was confidential and responsible, and what would be a reasonable compensation for the services rendered under that employment would depend somewhat at least upon the extent of the responsibility.

In *Kentucky Bank* v. Combs, 7 Pa. St., 543, Combs claimed compensation for his services in ineffectually endeavoring to procure

the return of one Lewis from Texas so that the Bank might use him as a witness in support of a claim for which it had brought suit. The court instructed the jury that as to the amount of their verdict they might consider the importance of the business intrusted to Combs and might "consider the extent of the claim of the Kentucky Bank on the Schuylkill Bank." In sustaining the instruction Gibson, C. J., said: "It is not to be doubted that responsibility, in a confidential employment, is a legitimate subject of compensation, and in proportion to the magnitude of the interests committed to the agent."

In the case at bar a fair and reasonable compensation for plaintiff's services in trying to sell the defendant's land, recoverable under the special promise of payment therefor as claimed by the plaintiff, might not be fully ascertainable from the mere fact of the number of letters the plaintiff wrote concerning the land, or the number of conferences he had with prospective purchasers, or the precise number of days actually employed in the service, but also from a consideration of the responsibility imposed upon the plaintiff by the employment, and that responsibility was determinable to some extent by the value of the property.

It is therefore the opinion of the court that the instructions complained of were not erroneous.

*Motion and exceptions overruled.*